## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION


TYRONE McAFFEE,

       Petitioner,

v.                              CASE NO:  8:07-CV-1206-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

       Respondents.
_____/


## ORDER

      Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition

for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. 1).  The Court has considered the

petition and Respondent's response (Dkt. 6). Petitioner did not file a reply. Upon review, the

Court determines that the petition must be denied because Petitioner failed to show that his

Fourteenth Amendment right of due process was violated by evidence of an impermissibly

suggestive identification, that he was denied his Sixth Amendment right to counsel, or that

he was deprived his Sixth and Fourteenth Amendment right to trial counsel and appellate

counsel.

## STANDARD OF REVIEW

      Pursuant to 28 U.S.C. §2254, as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996, "a district court

shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. §2254(d) governs the review of those claims. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

1      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003). A state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## BACKGROUND

**PROCEDURAL BACKGROUND**

On July 27, 2000, Petitioner, a 26 year-old African-American man, was indicted for two counts of sexual battery and one count of burglary. On April 22, 2003, a Pinellas County

jury found Petitioner guilty on one count of sexual battery, one count of burglary and one count of the lesser included offense of attempted sexual battery. Petitioner was sentenced to life as a violent career criminal for sexual battery, to life for burglary as a violent career criminal, and to 30 years for attempted sexual battery as a habitual felony offender. All three sentences were concurrent. The trial court denied his motion for new trial.

On May 7, 2004, the appellate court affirmed the conviction per curiam. *McAffee v. State*, 880 So. 2d 1226 (Fla. 2d DCA 2004). The Court of Appeal denied his motion for rehearing on June 10, 2004. The Court of Appeal denied Petitioner's petition of habeas corpus on November 4, 2005. *McAffee v. State*, 915 So. 2d 1210 (Fla. 2d DCA 2005).

On September 18, 2006, the Pinellas County Court denied Petitioner's Motion for Post Conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which was affirmed on April 13, 2007. *McAffee v. State*, 954 So. 2d 34 (Fla. 2d DCA 2007).

**FACTUAL BACKGROUND**

In the early hours of July 14, 2000, police officers from the Pinellas County Sheriff's Office responded to a 911 call from a house on Mockingbird Lane in Clearwater, Florida. Residents had contacted authorities after seeing a prowler outside their home and suspected he had tried to break into the house. A few minutes later, officers responded to another 911 call about a suspicious person in the backyard of a residence a short distance away. Using a police dog to track the scent of the suspicious person from the second residence's backyard, Kevin Andress ("Andress"), a corporal with the Pinellas County Sheriff's Officer, followed the scent to the home of the victim, Barbara Lindsley ("Lindsley"). Lindsley is mentally

handicapped, her IQ is 70 and she has the mental capacity of an 11 year-old child. When Andress knocked on Lindsley's front door, he heard a woman inside the house scream "Please help me. God, please help me." He then heard the sound of breaking glass coming from the back of the house.

Andress ran to the back of the house where he observed a man, the Petitioner, fleeing across Lindsley's backyard (Dkt. 10, Supp. II at R. 363). Andress pursued Petitioner who evaded another police officer, but was ultimately apprehended by the police dog a short distance away. Petitioner was wearing only white boxer shorts and tennis shoes when he was apprehended (Dkt. 10, Supp. II at R. 365-66). After handcuffing Petitioner, Andress observed that Petitioner's penis was sticking out of his boxer shorts and he was wearing a condom. A neighbor testified he saw police officers and the police dog pursuing Petitioner as he was trying to evade police.

Andress and another police officer returned to the residence and found Lindsley crying (Dkt. 10, Supp. II at R. 368). She appeared to have been beaten and said she had been raped. *Id*.

Petitioner was injured when he was apprehended by the police dog and was taken to Largo Medical Center for treatment. Lindsley was also transported to Largo Medical Center for treatment for injuries to her face and vaginal area. While at the hospital, police conducted a "show-up" to give Lindsley a chance to view the suspect police had in custody. Petitioner was placed in an MRI room with a one-way mirror and Lindsley was placed in an adjacent room with a view of the MRI room. When Lindsley saw Petitioner, she yelled "Oh, my God.

That's him."

At trial, Lindsley testified that she had been in her bedroom that night when she heard glass breaking and a door being kicked in. She testified that Petitioner pushed open her bedroom door, grabbed her and pulled her onto the bed, ripped off her clothes and began hitting her. Lindsley testified that she was on her back at the time of the attack (Dkt. 10, Supp. IV at R. 613). She testified that Petitioner shoved her clothing into her mouth, threatened to kill her if she told anyone about the incident, then proceeded to penetrate her vaginally and anally.

DNA evidence produced at trial indicated that Lindsley's blood was found on Petitioner's clothing found next to him where he was apprehended. A crime scene technician testified that shoe prints located at the crime scene could have been made by the sneakers Petitioner was wearing at the time police apprehended him.

A neighbor testified that he saw Petitioner prowling around his home that evening shortly before the attack. Some neighbors testified they found evidence that someone tried to break into their homes around the time of the attack.

## DISCUSSION

### Ground I

In support of his petition, Petitioner asserts:

> PETITIONER WAS DEPRIVED OF HIS 14TH AMENDMENT RIGHT TO DUE PROCESS AND A FAIR TRIAL AS HE WAS SUBJECTED TO IMPERMISSIBLY SUGGESTIVE IDENTIFICATION PROCEDURES

Petitioner asserts that having the victim identify Petitioner was impermissibly suggestive because she has the mental capacity of an 11 year-old, had just been involved in an emotionally-disturbing incident and police identified Petitioner as the person who had just been arrested.

According to clearly-established federal law, out-of-court identification procedures violate due process when the confrontation was "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. 293, 302 (1967), overruled on other grounds by *Griffith v. Kentucky*, 479 U.S. 314 (1987). Though the Court has criticized the practice of showing witnesses a single suspect rather than the suspect as one of several people in a line-up, the totality of the circumstances, including allowing a victim receiving hospital treatment to view the suspect in the hospital, can render this kind of procedure permissible. *Id*. at 302. Police showing a witness a single suspect for identification does not violate due process "so long as the identification possessed sufficient aspects of reliability. ... [R]eliability is the linchpin in determining the admissibility of identification testimony." *Manson v. Brathwaite*, 432 U.S. 98, 106, 114 (1977).

Courts evaluate the totality of the circumstances surrounding the reliability of the identification by considering the following factors: (1) the amount of time that elapsed between the crime and the witness's identification; (2) the witness's opportunity to see the suspect at the time of the crime; (3) the witness's level of attention at the time of the crime; (4) the amount of certainty the witness displayed at the time of identification and; (5) the accuracy of the witness's prior identification. *Id*. at 114. Even if it is determined that the trial

court committed an error by admitting the identification, a petitioner is entitled to habeas relief only by showing "actual prejudice" because the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007).

The trial court did not violate the Petitioner's due process rights when it admitted evidence of Petitioner's identification through the victim's out-of-court statement despite her mental handicap. The totality of the circumstances make it reasonable to conclude that identification procedures surrounding the victim's out-of-court identification of Petitioner were not so unnecessarily suggestive as to be conducive to irreparable mistaken identification.

The court conducted a thorough hearing on the defense's motion to suppress the out-of-court identification and the defense had the opportunity to cross examine witnesses. During the hearing, a police officer testified that prior to viewing Petitioner at the hospital, the victim gave police a description of her attacker that was consistent with the man police saw fleeing the victim's house and apprehended a short distance from her home (Dkt. 10, Supp. VII at R. 336-37). The court also pointed to the victim's detailed recollection of the events as evidence of the reliability of the identification (Dkt. 10, Supp. VII at R. 355). Additionally, the court noted that prior to the show-up, police did not tell the victim that police were showing her the man who attacked her; they simply told her she would see a person authorities had apprehended (Dkt. 10, Supp. VII at R. 357).

Regarding the victim's ability to see her attacker at the time of the attack, the court found it credible that the victim would have been able to see her attacker's face even though

her glasses had been knocked off and the room was not fully lit (Dkt. 10, Supp. VII at R. 355-56). Evidence presented during the motion to suppress hearing indicated that the victim saw the intruder's face before he turned off the lamp illuminating the room, and that an exterior light still provided light in the room (Dkt. 10, Supp. VII at R. 309-10). Evidence also showed that the victim could see facial features and read written words without wearing her reading glasses (Dkt. 10, Supp. VII at R. 303-04).

Evidence presented at trial further supports the trial court's decision to admit the out-of-court identification. Only a few hours transpired between the attack and the victim identifying Petitioner at the hospital, minimizing the likelihood that the victim's memory had blurred or faded. The victim testified that she was on her back at the time of the attack, which would have allowed her to face the intruder during the course of the assault (Dkt. 10, Supp. IV at R. 612-13). Additionally, the moment she saw Petitioner in the show-up, the victim instantly identified him as her attacker (Dkt. 10, Supp. V at R. 5 at 806).

Even if the identification was unreliable, Petitioner has not demonstrated "actual prejudice." The circumstances of Petitioner's apprehension as well as his physical appearance at the time strongly indicate that Petitioner attacked the victim. Not only did police and another witness identify Petitioner as the person fleeing the victim's house at the time of the attack, when authorities apprehended Petitioner he was wearing only sneakers and boxer shorts, his penis was exposed and he was wearing a condom (Dkt. 10, Supp. II at R. 365-67). Authorities apprehended Petitioner a short distance away from the victim's home. Physical evidence also pointed to Petitioner's guilt. DNA evidence showed that the victim's blood was

found on Petitioner's clothing after the attack (Dkt. 10, Supp. V at R. 890, 895). A crime scene technician testified that shoe prints he found at the crime scene could have been made by shoes Petitioner was wearing when he was apprehended (Dkt. 10, Supp. IV at R. 728-29).

Petitioner has failed to demonstrate that the trial court's decision to allow the victim's out-of-court identification was contrary to or an unreasonable application of clearly established federal law as articulated in *Stovall v. Denno*, 388 U.S. 293 (1967), and *Manson v. Brathwaite*, 432 U.S. 98 (1977), or an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. §2254(d). Petitioner did not present new evidence to overcome the presumption of correctness of the trial court's factual determinations. *See* 28 U.S.C. §2254(e). The Court finds that Petitioner is not entitled to relief on the claims presented in Ground I.

**Ground II**

In support of his petition, Petitioner asserts:

> PETITIONER'S 6TH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED WHEN THE DETECTIVE CONDUCTED A ONE-ON-ONE LINEUP AFTER PETITIONER'S INVOCATION OF HIS RIGHT TO COUNSEL

According to well-established federal precedent, a defendant has a right to counsel under the Sixth Amendment only once the government has initiated criminal proceedings against the defendant. *Kirby v. Illinois*, 406 U.S. 682 (1972). The proceedings are deemed to have begun "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Id*. at 688-89. The right to counsel does not attach at a pre-arraignment line-

up before a defendant has been charged. *Id*. The Court has never held that the Sixth Amendment right to counsel attaches at the moment of a defendant's arrest. *U.S. v. Gouveia*, 467 U.S. 180, 190 (1984).

Petitioner's argument fails because his Sixth Amendment right to counsel did not attach at the time the victim identified him in the show-up. Petitioner had merely been detained by authorities at the time police gave the victim the opportunity to view and identify Petitioner. He had not been indicted or otherwise formally charged. Thus, he was not constitutionally entitled to the Sixth Amendment right to counsel at that time.

Furthermore, even if Petitioner's Sixth Amendment had been violated, it would have been a harmless error. As discussed *supra*, Petitioner is entitled to relief only if the error had prejudiced him because it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637 (1993). Significant reliable evidence independent of the victim's out-of-court identification strongly pointed to Petitioner's guilt, including testimony from police who saw Petitioner fleeing the victim's house, Petitioner wearing boxer shorts and a condom at the time of his apprehension, as well as physical evidence, including the victim's DNA found on Petitioner's clothing. In short, an error in permitting the out-of-court identification would not have prejudiced Petitioner or have had a substantial or injurious effect on the jury's decision.

Therefore, this Court finds that Petitioner is not entitled to relief on the claims presented in Ground II.

**Ground III**

In support of his petition, Petitioner asserts:

> PETITIONER WAS DEPRIVED OF HIS 6TH AND 14TH
> AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
> APPELLATE COUNSEL BY APPELLATE COUNSEL
> FAILING TO ARGUE ON PETITIONER'S DIRECT APPEAL
> THAT THE TRIAL COURT ABUSED ITS DISCRETION IN
> NOT GRANTING THE DEFENSE MOTION TO STRIKE
> THE ENTIRE JURY POOL AS A RESULT OF
> PROSPECTIVE JURORS MAKING PREJUDICIAL
> COMMENTS TOWARDS PETITIONER, THEREBY
> DEPRIVING PETITIONER OF HIS 5[TH], 6TH, AND 14TH
> AMENDMENT RIGHT TO DUE PROCESS, A
> FUNDAMENTALLY FAIR TRIAL AND IMPARTIAL JURY

According to Petitioner, the following comments made during voir dire of the first of two jury panels tainted that entire first panel:

- Prospective juror Lynn Grossman: "I couldn't be fair. I was in an abusive relationship, and I say castrate the man." (Dkt. 10, Supp. I at R. at 48).

- Prospective juror Howard Pennypacker: "When you read those charges - I'm surprising myself in having automatic prejudice. I don't think that the Lindsley woman would have gone to all of that trouble if Tyrone was innocent. ..." (Dkt. 10, Supp. I at R. 48).

- Prospective jurors Eugene Borcherding, Pennypacker and Grossman all indicated they were disturbed by the fact that the case involved an African-American man allegedly having attacked a white woman (Dkt. 10, Supp. I at R. at 144-45).

Petitioner also alleges that a later conversation between two prospective jurors tainted the jury pool and was grounds for dismissing the entire pool. A bailiff told the court that he overheard two prospective jurors discussing the case and making remarks indicating they thought the defendant was guilty (Dkt. 10, Supp. II at R. 320).

A trial court finding of juror impartiality can be overturned only for "manifest error." *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991) (internal quotation marks omitted). In selecting an impartial jury, state trial courts have broad discretion to determine what questions must be asked of prospective jurors to ensure selection of an impartial jury. *Id*. at 424. The Florida Supreme Court has affirmed decisions of trial courts not to strike jury pools after some prospective jurors heard potentially prejudicial statements when the trial court evaluated each juror's ability to be impartial, which can cure any potential prejudice. *See Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990) (a jury pool was not tainted by a spectator telling a prospective juror she thought a defendant was guilty); *see also Street v. State*, 636 So. 2d 1297, 1302 (Fla. 1994) (jurors heard a passerby utter the word "guilty" and under later questioning each juror said the comment did not affect his or her ability to be fair and impartial); *see also Scull v. State*, 533 So. 2d 1137, 1141 (Fla. 1988) (prejudice that might have occurred when jurors witnessed the jury foreman embrace defendant's mother was cured by dismissing the foreman and asking each juror whether he or she would be influenced by the event).

The standard for proving ineffective assistance of counsel sets a high bar for Petitioner to overcome. The two-prong test spelled out in *Strickland v. Washington*, 466 U.S. 668 (1984)

requires a petitioner to show (1) counsel's performance was so deficient and he made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and (2) counsel's substandard performance prejudiced the defendant. *Id*. at 687. Counsel's performance is not inadequate unless he did not act as "a reasonably competent attorney." *Id*. (internal quotation marks omitted). This deferential standard carries with it the strong presumption that counsel's performance fell "within the wide range of reasonable professional assistance" and that counsel's actions were "sound trial strategy." *Id*. at 689. Accordingly, a defendant claiming ineffective assistance of counsel must identify acts or omissions that were not the result of reasonable professional judgment, and a court must consider whether those acts were outside "the wide range of professionally competent assistance." *Id*. at 690. Courts should not evaluate counsel's performance based on what was "possible or what is prudent or appropriate" but only on "what is constitutionally compelled." *Chandler v. U.S.*, 218 F.3d 1305, 1313 (11th Cir. 2000).

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 287-89 (2000). The United States Supreme Court has specifically held that appellate counsel should pick and choose which non-frivolous claims to raise on appeal in order to maximize the defendant's chance for success, rather than raising every legitimate argument. *Id*. at 288.

In this case, Petitioner has failed to show that appellate counsel's actions were seriously deficient or that failure to raise a claim regarding jury pool tainting prejudiced his appeal. It would have been frivolous for appellate counsel to raise this claim because the trial

judge appears to have acted within his discretion in assessing the impartiality of each juror, and failure to raise a meritless argument does not fall outside the wide range of professionally competent assistance.

The trial court in this case allowed for the prosecution and defense to conduct extensive questioning of each juror during voir dire. None of the jurors who made the allegedly prejudicial comments were seated on the jury. This Court disagrees with Petitioner's characterization of prospective jurors Grossman, Pennypacker and Borchering's comments as prejudicial and capable of tainting those who would ultimately serve as jurors. Each prospective juror's comments addressed his or her individual prejudices (e.g. Pennypacker stating he automatically presumed prejudice) rather than a prejudicial statement about the defendant himself. Furthermore, each juror selected from that jury panel stated he or she would be able to judge the case fairly (Dkt. 10, Supp. I at R. 151-53, 158-59, 162, 167-68).

As for the conversation the bailiff said he overhead between two prospective jurors, neither of the two were seated on the jury. The trial judge also questioned each of the six jurors and the alternate juror whether he or she overheard the conversation, and each replied in the negative (Dkt. 10, Supp. II at R. 322-24).

For these reasons, Petitioner fails to meet the *Strickland* standard requiring proof of counsel's highly deficient performance and actual prejudice. Petitioner does not point to anything specific in his petition indicating that failure to include this claim in his appeal would have resulted in a reversal of his conviction. The overwhelming eyewitness testimony and physical evidence presented at trial strongly pointed to Petitioner's guilt. That being the

case, it is very likely that the appellate court would have upheld the conviction regardless of potential bias among jurors.

As a result, this Court finds that Petitioner is not entitled to relief on the claims presented in Ground III.

## **Ground IV**

In support of his petition, Petitioner asserts:

> PETITIONER WAS DEPRIVED OF HIS 6TH AND 14TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL BY APPELLATE COUNSEL FAILING TO ARGUE ON PETITIONER'S DIRECT APPEAL THAT THE TRIAL COURT ERRED IN FAILING TO CONDUCT AN ADEQUATE INQUIRY TO DETERMINE WHETHER JUROR SAYLES AND ALTERNATE JUROR SMILEY HEARD THE PREJUDGMENT COMMENTS OF PROSPECTIVE JURORS

As discussed *supra*, a bailiff told the trial court judge that he overheard two prospective jurors discussing the case and making remarks indicating they thought the defendant was guilty (Dkt. 10, Supp. II at R. at 320). Petitioner argues that the judge, in questioning jurors about the exchange, did not adequately evaluate two jurors' impartiality because both indicated they did not know what conversation the judge was referencing.

As previously discussed, a trial court judge has broad discretion when overseeing selection of an impartial jury and to conduct questioning or other actions to cure potential prejudice. *Mu'Min*, 500 U.S. at 424; *see also Occhicone*, 570 So. 2d at 904; *see also Street*, 636 So. 2d at 1302. Additionally, proving ineffective assistance of counsel requires defendant to prove both that (1) counsel's performance was outside the broad range of reasonable

professional assistance and that (2) this deficient assistance prejudiced the defendant. *Strickland*, 466 U.S. at 687.

As in Ground III, Petitioner unsuccessfully argues in this Ground that appellate counsel's failure to raise a frivolous claim constituted ineffective assistance of counsel. Petitioner mischaracterizes the judge's questioning during this portion of voir dire. Petitioner states that when the judge asked potential jurors Sayles and Smiley (who ultimately served as a juror and an alternate juror, respectively) if they had overheard the conversation, both responded that they were not sure which conversation the judge was referencing (Dkt. 10, Supp. II at R. at 321). Petitioner fails to acknowledge that after elaborating on the conversation in question, the judge asked Sayles a second time if he overheard the exchange and Sayles responded "No, sir." (Dkt. 10, Supp. II at R. at 323). Petitioner mischaracterizes Smiley's response which was "I am not sure which discussions you are talking about; but, *no, I was reading, so –* " indicating that even if Smiley was initially unsure of which conversation was being discussed, he was busy reading so would not have heard other jurors talking (Dkt. 10, Supp. II at R. 322, emphasis added). Petitioner also fails to mention that the judge asked Smiley a second time if he overheard the conversation, and Smiley responded that he had not (Dkt. 10, Supp. II at R. 323). The judge asked each juror if he or she overheard the conversation in order to ensure the jurors' impartiality had not been tainted. Petitioner also fails to articulate how his counsel's actions were outside the wide range of professionally competent assistance, or that it was so prejudicial that the appellate court would have reversed the conviction if it had been aware of the issue.

Therefore, this Court finds that Petitioner is not entitled to relief on the claims presented in Ground IV.

**Ground V**

In support of his petition, Petitioner asserts:

> PETITIONER WAS DEPRIVED OF HIS 6TH AND 14TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO OBJECT, MOVE FOR A MISTRIAL, AND OTHERWISE PRESERVE FOR APPELLATE REVIEW, THE ISSUE THAT THE INTRODUCTION OF EXTENSIVE OTHER CRIME EVIDENCE DEPRIVED PETITIONER OF HIS 14TH AMENDMENT RIGHT TO DUE PROCESS AND A FUNDAMENTALLY FAIR TRIAL BECAUSE THE EXTENSIVE OTHER CRIME EVIDENCE BECAME A FEATURE OF THE TRIAL THEREBY UNDULY PREJUDICING PETITIONER

During the trial, the prosecution introduced evidence that homeowners in the vicinity of the victim's house saw Petitioner prowling near their home, as well as evidence that Petitioner had tried to break into some homes in the area (Dkt. 10, Supp. III at R. at 406-76).

The Williams Rule under Florida's Rules of Evidence prohibits evidence of a criminal defendant's prior bad acts or collateral crimes in order to prove bad character or the defendant's propensity to act in a certain way. Fla. Stat. §90.404(2)(a). Bad acts evidence is admissible to prove a material fact in issue, including motive, opportunity, intent, preparation and identity. *Id*.

Petitioner's claim is factually incorrect because his trial counsel objected to the evidence of other bad acts and the trial judge instructed jurors that Petitioner was not being

tried for those acts (Dkt. 10, Supp. III at R. 404-05). Counsel objected to this evidence, preserving the issue for appeal.

Regarding the constitutionality of the underlying issue, the trial court's decision to allow evidence of Petitioner's prior bad acts committed shortly before the attack on the victim is based on questions of state evidentiary law. It is not within the purview of federal courts to second-guess a state court's interpretation of state law. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). A federal court can rule that a state court's evidentiary ruling violates due process only if "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 202 (1977). Given that the evidence made a connection between a suspected prowler in the area who attempted to break into houses and Petitioner's apprehension fleeing from a house he was accused of burglarizing and whose occupant he was accused of sexually assaulting, the evidence did not violate deeply-rooted traditions of justice. Indeed, the evidence was appropriate since it related to opportunity and identity.

Even if Petitioner's counsel had failed to properly object to the evidence, Petitioner has not shown that such actions would have been outside the range of professionally competent assistance, or how it prejudiced the outcome. Petitioner argues that but for this other bad acts evidence, there is a "reasonable probability that the jury would have entertained a reasonable doubt as to Petitioner's guilt ..." (Dkt. 1 at R. 25). As discussed *supra*, many sources of evidence, including multiple eyewitnesses and DNA evidence independent of the bad acts evidence linked Petitioner to the assault. In the unlikely situation that the evidence improperly

prejudiced the jury against Petitioner, there is sufficient alternative evidence that would have provided grounds for the jury's conviction.

Petitioner has failed to prove that his Sixth and Fourteenth Amendment rights were violated because trial counsel did not provide ineffective assistance. Trial counsel objected to the evidence. Furthermore, Petitioner fails to show that trial counsel acted outside the wide range of professionally competent assistance, or that counsel's acts or omissions prejudiced Petitioner. As a result, this Court finds that Petitioner is not entitled to relief on the claims presented in Ground V.

## Ground VI

In support of his petition, Petitioner asserts:

> PETITIONER WAS DEPRIVED OF HIS 6TH AND 14TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILING TO OBJECT AND OTHERWISE PRESERVE, FOR APPELLATE REVIEW, THE TRIAL COURT'S RESOLUTION OF THE JURY REQUEST FOR A COPY OF THE ALLEGED VICTIM'S TESTIMONY AND FOR ACQUIESCING TO THE TRIAL COURT'S RESOLUTION OF THE JURY REQUEST

After the jury had retired to deliberate, the foreman sent a written request for the transcript of the victim's testimony. No transcript existed at the time, so the judge instructed jurors to rely on their memories. Petitioner's counsel did not object. Petitioner correctly acknowledges that Florida Rule of Criminal Procedure 3.410 gives the trial judge the discretion to have testimony read back to the jury.

Petitioner argues that had the trial judge ordered the victim's testimony be read back to the jury, jurors would have believed Petitioner's theory that the victim let Petitioner into her home because of her diminished mental capacity and that there was no evidence that Petitioner's penis, as opposed to his finger, entered or had union with the victim's vaginal and anal areas. Petitioner also claims that the trial court's refusal to have testimony read back to the jury incorrectly conveyed to the jury that there was no method to read back the testimony, and that it mislead or confused the jury whether a read back was allowed.

There is no United States Supreme Court precedent governing whether a state trial judge must read back testimony. Rule 3.410 allows trial courts to have a read back, and Florida trial judges have broad discretion to decide when to order a read back. *See, e.g., Haliburton v. State*, 561 So.2d 248, 250 (Fla. 1990). If Petitioner's counsel had objected to the judge's decision to not have a read back it would have been a meritless objection, therefore counsel's failure to object was not an error. Failure to make a frivolous objection does not render counsel's assistance so ineffective that it fell outside the wide range of professionally competent assistance.

Additionally, Petitioner fails to articulate a colorable explanation of how counsel's failure to object prejudiced his case. Other evidence in the case points to Petitioner's culpability. His assertion that jurors would have believed his theory of the case if only they had the chance to re-evaluate the victim's testimony is purely speculative. What's more, the judge's response that there was no transcript was not misleading or the kind of response that would be confusing. No transcript was available at the time and the judge communicated this

fact to the jury. Regardless of whether this created confusion in jurors' minds over the details

of a procedural rule, the judge's ability to have the court reporter read back the testimony,

has no bearing on the jury's verdict. Petitioner's claim that counsel's failure to object to this

outcome is unrelated to counsel's competence in assisting Petitioner in his defense. Thus,

Petitioner has not shown that this prejudiced the jury's verdict. Ground VI will be denied.

**Ground VII**

In support of his petition, Petitioner asserts:

> PETITIONER WAS DEPRIVED OF HIS 6TH AND 14TH
> AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
> TRIAL COUNSEL FOR FAILING TO OBJECT TO THE
> PROSECUTION ELICITING TESTIMONY AND ENTERING
> ANY OTHER EVIDENCE IN TRIAL REGARDING THE
> CUTTINGS FROM THE SHORTS PETITIONER
> ALLEGEDLY WORN WHEN APPREHENDED AS A
> RESULT OF PROSECUTION WITNESS PATRICIA
> BENCIVENGA TESTIFYING THAT THE PACKAGING
> REGARDING EXHIBIT 14-A AND 14-B SEEMED TO HAVE
> EVIDENCE OF TAMPERING

During the trial, prosecution witness Patricia Bencivenga ("Bencivenga"), a DNA

expert, gave testimony indicating the victim's DNA was found on cuttings taken from a pair

of Petitioner's blue jean shorts. The prosecutor asked Bencivenga to examine the blue jean

shorts from which she took cuttings that she later analyzed for evidence of DNA. When the

prosecutor asked Bencivenga if the packaging around the blue jean shorts showed signs of

tampering beyond her own in the lab, she replied that it did show signs of tampering. She then

testified that she took cuttings from the shorts and analyzed them for evidence of DNA. The

prosecutor then moved the cuttings into evidence. Petitioner argues that his counsel's failure

to object to this evidence amounted to ineffective assistance of counsel because Bencivenga said the shorts showed signs of tampering and the cuttings from the shorts produced the only DNA evidence in the case linking Petitioner to the victim.

Petitioner took Bencivenga's statement out of context and mischaracterized its importance. Though the DNA expert did say the packaging around the blue jean shorts showed signs of tampering, Petitioner fails to mention that the prosecutor had a previous witness, Corporal Kenneth Page ("Page") of the Pinellas County Sheriff's Office, cut through the packaging in order to examine the shorts when Page was testifying a short time earlier in the day's proceedings (Dkt. 10, Supp. V at R. 753). Page testified that when he arrived at the scene, officers had Petitioner detained on the ground and that the same blue jean shorts were on the ground next to Petitioner (Dkt. 10, Supp. V at R. 745). The prosecutor moved the blue jean shorts into evidence during Page's testimony (Dkt. 10, Supp. V at R. 754). Thus, the fact that Bencivenga testified that the packaging around the blue jean shorts showed signs of tampering was of little importance because the "tampering" occurred when another witness opened the packaging earlier during the trial under the supervision of the trial judge and defense counsel. The blue jean shorts had already been admitted into evidence without concern about the chain of custody, falsification or other alterations to the shorts. It would have been frivolous for defense counsel to object to the shorts being introduced into evidence.

Under the first *Strickland* prong, defense counsel's failure to make a meritless objection does not constitute a lack of competence. Similarly, because such an argument would have been meritless, Petitioner cannot establish prejudice.

Petitioner has failed to prove that his Sixth and Fourteenth Amendment rights were violated because trial counsel did not provide ineffective assistance for failing to object to Petitioner's shorts being introduced into evidence. Trial counsel's failure to make a meritless objection did not render his assistance outside the wide range of professionally competent assistance. Petitioner has also failed to show that counsel's actions prejudiced Petitioner. As a result, this Court finds that Petitioner is not entitled to relief on the claims presented in Ground VII.

It is therefore ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. 1) is DENIED.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on September 23, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2007\07-cv-1206.deny 2254.wpd*